**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 5:24-cr-44-KKC-MAS-6**

**UNITED STATES OF AMERICA**                                                              **PLAINTIFF**

**V.**                                                **PLEA AGREEMENT**

**DANIEL GORDIANO VALENZUELA**                                              **DEFENDANT**

**\*   \*   \*   \*   \***

1.  Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Indictment. Count 1 charges a violation of 18 U.S.C. § 1956(h), conspiracy to commit money laundering. The Defendant agrees to the forfeiture of seized currency and imposition of a forfeiture money judgment. Pursuant to Rule 11(c)(1)(A), the United States will not bring additional charges against the Defendant based upon evidence in its possession at the time of the execution of this Agreement and arising out of the Defendant's conduct within the Eastern District of Kentucky, unless the Defendant breaches this Agreement.

2.  The essential elements of Count 1 are as follows:

> (a) First, that two or more persons conspired, or agreed, to commit the crime of money laundering, and

> (b) Second, that the Defendant knowingly and voluntarily joined the conspiracy.

3.  As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a)  Beginning in June 2022, and continuing until May 2024, the defendant, Daniel GORDIANO Valenzuela, agreed with at least one other person to commit money laundering offenses. GORDIANO's role in the conspiracy was to accept contracts from coconspirators (charged or uncharged) to arrange for the collection of drug proceeds in the United States and the repatriation of the proceeds (or their equivalent value) to Mexico. On a few occasions, GORDIANO also brokered drug distribution offenses which occurred in the United States, in or near Austin, Texas and Detroit, Michigan. GORDIANO knew that the money that was laundered was proceeds of drugs distributed by others in the United States. GORDIANO received an agreed-upon percentage of the money laundered as his fee (or commission) for brokering these transactions.

(b)  GORDIANO admits that coconspirators would contact him to advise that bulk cash needed to be picked up in a specific city in the United States and repatriated to Mexico. GORDIANO would then contact coconspirators within a large network of individuals to arrange for a "money drop," the transfer of the bulk cash drug proceeds from one courier to another. GORDIANO would request a phone number to contact the individual courier who would receive the drug proceeds. GORDIANO would also request a serial number from U.S. currency (usually a one-dollar bill) for use by the couriers during the money drop. The serial number from the currency would generally be referred to as a "bill code"

2

or a "token."  Once GORDIANO obtained a phone number and bill code, he, or other conspirators, would pass that phone number and bill code to the U.S.-based coconspirators who would deliver the money. The bill code would typically be sent as an attachment to a text message. The couriers on each side of the transactions, those delivering drug proceeds and those receiving drug proceeds, would arrange to meet at a specified time and designated public location. When the couriers met to transfer the money, the courier delivering the bulk cash would check that the recipient courier had the specified bill code. The recipient courier would provide the actual paper bill or an electronic copy.

(c)  The recipient courier would deposit the bulk cash into a bank account in the United States. The recipient courier or his network would notify GORDIANO when the money had been deposited into a bank account, often providing a screenshot of the deposit receipt to GORDIANO as proof. GORDIANO then would instruct the courier, or members of the money laundering network, to transfer those funds. Typically, GORDIANO would direct that those funds be sent to cryptocurrency wallet addresses or specified bank accounts.  These steps were taken to conceal or disguise the source of the funds and true owners of the funds.

(d)  Drug Enforcement Administration (DEA) agents infiltrated the network of drug traffickers and money launderers. Undercover DEA agents in the Eastern District of Michigan and the Western District of Texas communicated directly with GORDIANO by phone and by text messages. From approximately December 2022 to May 2024, GORDIANO brokered, or co-brokered, approximately 25 money laundering contracts on

3

behalf of the conspiracy. The contracts averaged approximately $100,000 but ranged from approximately $25,000 to $130,000. The total amount of money in these contracts brokered by GORDIANO was approximately $1.9 million dollars. These funds from contracts brokered by GORDIANO and/or his coconspirators were deposited into bank accounts prior to transfer to cryptocurrency wallets or to other bank accounts. The following chart summarizes the transactions personally brokered by GORDIANO:

| DATE | AMOUNT OF $ | LOCATION |
|---|---|---|
| 12/27/2022 | $26,000 | Detroit |
| 3/8/2023 | $102,048.00 | Houston, TX |
| 3/14/2023 | $47,000.00 | Wire Transfers after cash deposit |
| 3/23/2023 | $130,560 | Austin, TX |
| 3/24/2023 | $72,004.00 | Houston, TX |
| 5/10/2023 | $110,080 | Austin, TX |
| 5/17/2023 | $99,100 | Austin, TX |
| 6/22/2023 | $40,070 | Austin, TX |
| 7/13/2023 | $80,000 | Tulsa, OK |
| 7/27/2023 | $116,920 | Austin, TX |
| 8/2/2023 | $99,570 | Atlanta, GA |
| 8/2/2023 | $60,005 | Tulsa, OK |
| 8/3/2023 | $53,700 | Houston, TX |
| 8/15/2023 | $99,940 | Atlanta, GA |
| 8/30/2023 | $64,000 | Atlanta, GA |
| 9/13/2023 | $80,000 | Atlanta, GA |
| 10/9/2023 | $58,000 | Chicago, IL |
| 10/17/2023 | $104,980 | Atlanta, GA |
| 11/3/2023 | $36,500 | Detroit, MI |
| 12/27/2023 | $103,790 | Youngstown, OH |
| 1/8/2024 | $42,890 | Youngstown, OH |
| 2/26/2024 | $100,040 | Ocala, FL |
| 3/28/2024 | $86,020 | Deland, FL |
| 4/1/2024 | $100,000 | Detroit, MI |
| 4/25/2024 | $59,860 | Deland, FL |
| **TOTAL** | $1,973,076 | |

(e)   Coconspirators (including codefendants) arranged for drug proceeds to be picked up in Lexington, KY, which is within the Eastern District of Kentucky. For example, on January 16, 2023, a codefendant arranged for drug proceeds in the approximate amount of $250,000 to be picked up in Lexington. After a token and phone number were passed to other conspirators, a local drug distributor arranged to meet with the undercover DEA agent at The Summit in Lexington. After confirming the token with the undercover, the drug distributor delivered a bag which contained $244,460 in U.S. currency. Other codefendants directed that the money be sent to a cryptocurrency wallet address.

(f)  In April 2023, GORDIANO brokered a drug transaction for "China food" in the Eastern District of Michigan. DEA agents understood the reference to "China food" to mean heroin. A courier delivered approximately ¾ kilogram to an undercover agent. The prorated price (since it was less than the agreed-upon quantity of one kilogram) was $22,080. A chemist at a DEA laboratory tested the substance and determined that it contained 731 grams of heroin that was 96% pure. GORDIANO received a payment of $1,500 for brokering this transaction.

(g)  In April and May 2023, GORDIANO brokered a contract for drug proceeds to be picked up in Austin, TX. GORDIANO received the token or bill code, and a phone number for the courier. On May 10, 2023, the courier delivered $110,080 to an undercover DEA agent. After the money was deposited into a bank account, the funds (minus commission) were sent to a cryptocurrency address controlled by a coconspirator. The next

5

day, on May 11, 2023, GORDIANO brokered a one-kilogram drug transaction in Austin. The same courier who delivered the U.S. currency delivered one kilogram of heroin to the undercover. GORDIANO received $2,000 as his fee, which he directed to be sent to a relative's bank account at Bank of America. Testing by a chemist at a DEA laboratory showed that the substance had a net weight of 1,080 grams which contained heroin that was 95% pure.

(h)    GORDIANO admits that his offense conduct includes laundered funds in the amount of approximately $1.9 million dollars. Based on his commissions received per each contract, GORDIANO received approximately $100,000 as his compensation.

4.    The statutory punishment for Count 1 is imprisonment for not more than 20 years, a fine of not more than $500,000, or twice the value of the property involved in the transaction, whichever is greater, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of sentencing.

5.    Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations.  This recommendation does not bind the Court.

(a)    United States Sentencing Guidelines (U.S.S.G.), November 1, 2026, Manual, will determine the Defendant's guidelines range.

(b)    Pursuant to U.S.S.G. § 2S1.1(a)(2), the base offense level for Count 1 is 22 (8 levels, plus 14 levels for funds more than $750,000 but not more than $2,000,000 per the table in § 2B1.1(b)(1)(H)).

(c)    Pursuant to U.S.S.G. § 2S1.1(b)(1)(A) and (B)(i), increase the offense

level by 6 levels because § 2S1.1(a)(2) applies, and the Defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote, an offense involving the manufacture, importation, or distribution of a controlled substance.

(d)  Pursuant to U.S.S.G. § 2S1.1(b)(2)(C), increase the offense level by 4 levels because the Defendant was in the business of laundering funds.

(e) If the Defendant meets all the criteria at U.S.S.G. § 4C1.1(a) as a zero-point offender, he will be eligible for a 2-level reduction to the offense level.

(f)  Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility.  If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6.  No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7.  The Defendant waives the right to file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2.

8.  The Defendant waives the right to appeal the guilty plea and conviction.  Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9.  The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status.  The Defendant understands that since he is not a United States citizen, he may be removed from the United States, denied citizenship, and denied admission to the United States in the future because of this conviction.

10.  The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the Bill of Particulars filed on September 20, 2024, and $100,000.00 in U.S. currency seized during a traffic stop of Ofer Villa Rodriguez on or about August 30, 2023. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense to which he is pleading guilty. The Defendant also consents to the imposition of a forfeiture money judgment in the amount of $100,000.00, which represents the amount of proceeds that the Defendant obtained as a result of, and, in turn, the amount involved in, the offense to which he is pleading guilty. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees to take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture here and/or fails to pay in full the forfeiture money judgment, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture and/or up to the amount of the forfeiture money judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the

8

conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met.  The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders.  The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture.  The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure.  Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement.  The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination.  The Defendant will not encumber, transfer, or dispose of any monies,

9

property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

14.  If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

15.  This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant.  The United States has not made any other promises to the Defendant.

16.  This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17.  The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

JASON D. PARMAN
FIRST ASSISTANT U. S. ATTORNEY

Date: 7/27/2026      By: _____
                         G. Todd Bradbury
                         Assistant United States Attorney

Date: 7/27/2026      By: _____
                         Elizabeth R. Rabe
                         Deputy Chief
                         Money   Laundering,   Narcotics   and
                         Forfeiture Section / DOJ-CRM

Date: 7-27-26        _____
                         Daniel Gordiano Valenzuela
                         Defendant

Date: 7-27-26        _____
                         Thomas C. Lyons
                         Attorney for Defendant

12